**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| JUDITH A. ROLLINS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. G-06-081 |
| | § | |
| CLEAR CREEK INDEPENDENT | § | |
| SCHOOL DISTRICT, | § | |
| | § | |
| Defendant. | § | |

**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
**AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Judith A. Rollins ("Plaintiff") brings this action against Defendant Clear Creek

Independent School District ("Defendant") seeking equitable and monetary relief under the Age

Discrimination in Employment Act (ADEA) and the Due Process and Equal Protection Clauses of

the United States Constitution.  Defendant filed a Motion for Summary Judgment, and Plaintiff filed

a competing Motion for Partial Summary Judgment.  Both Parties timely filed Responses, and

Defendant filed a Reply to Plaintiff's Response in Opposition to Defendant's Motion for Summary

Judgment. For the reasons stated below, Plaintiff's Motion is respectfully **DENIED**, and Defendant's

Motion is **GRANTED**.

**I.  Background**

Plaintiff retired from her position as a schoolteacher under the Teacher Retirement System of

Texas in June 2003.  In August 2003, Clear Creek Independent School District hired her under a one-

year term contract as a full-time computer science teacher.  State law permitted Plaintiff to return to

1

work as a teacher in "acute shortage areas" under certain conditions and not lose her pension benefits.

Under Texas law, a term contract between a teacher and a school district will be automatically renewed unless the school district notifies the teacher in writing forty-five days before the last day of instruction in a school year that it does not plan to renew the contract. TEX. EDUC. CODE ANN. § 21.206 (Vernon 2006).  In June 2004, Defendant adopted a new policy whereby it would not renew the contracts of its teachers that were rehired as retirees.  In the spring of 2005, Plaintiff received notification that she could either resign from her term contract or face nonrenewal at the end of the school year.  She was further advised that she could re-apply for employment for the following school year.  Under Defendant's policy, retirees are not considered for reemployment until August 1 of each year.

Plaintiff did not resign and was given notice of a proposed nonrenewal of her contract.  She was provided a hearing before the School Board, and the School Board nonrenewed her contract.  She appealed to the Texas Commissioner of Education, who denied Plaintiff's appeal. *See Tarrant v. Clear Creek Indep. Sch. Dist.*, TEA Dkt. No. 080-R1-605 (Comm'r Educ. 2005).  Plaintiff next appealed the Commissioner's decision to the 56th District Court, Galveston County, Texas.  The district court likewise upheld the nonrenewal.  Finally, Plaintiff appealed the decision of the district court, and the appeal was pending at the state appellate court when briefing was filed in this case.

Plaintiff brings this action in federal court alleging that Defendant's nonrenewal of her term contract constitutes discrimination based on age, in violation of the ADEA and the Equal Protection Clause and that her Due Process rights were violated.  Defendant, in turn, alleges that it did not discriminate against Plaintiff because of age.  Rather, it claims that it's policy not to renew the term contracts of retired teachers who have been rehired is based on the retirement status of its teachers

who have been rehired and that the policy is necessary for it to be in compliance with state laws that require Defendant to give preference to non-retired teachers when making its hiring decisions.

## II.  Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552–53, 91 L. Ed. 2d 265 (1956).  The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553.  The non-moving party must come forward with "specific facts showing there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).  The court must view all evidence in the light most favorable to the non-movant.  *See, e.g., Broussard v. Parish of Orleans*, 318 F.3d 644, 650 (5th Cir. 2003).

If the evidence would permit a reasonable fact finder to find in favor of the non-moving party, summary judgment should not be granted.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).  However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S. Ct. 2512.  Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact.  *See id.* at 255, 106 S. Ct. at 2513.

## III.  ADEA Claims

The ADEA prohibits an employer from discriminating against an employee who is over forty

3

years of age on the basis of age. *See* 29 U.S.C. § 623, 631 (2000)**.** Congress recognized that "older workers [often] find themselves disadvantaged in their efforts to retain employment," and thus passed the ADEA, in part, "to promote employment of older persons based on their ability rather than age," and "to prohibit arbitrary age discrimination in employment." 29 U.S.C. § 621. Plaintiffs may allege both disparate treatment claims and disparate impact claims under the ADEA. *See Smith v. City of Jackson*, 544 U.S.228, 125 S. Ct. 1536, 161 L. Ed. 2d 410 (2005) (holding that disparate impact claims are available under the ADEA); *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609, 113 S. Ct. 1701, 1706, 123 L. Ed. 2d 338 (1993) (noting that the statutory language of the ADEA allows for disparate treatment claims).

*A. Disparate Treatment*

Courts use the *McDonnell Douglas* shifting burden analysis for disparate treatment claims arising under Title VII. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). The same framework is used for an ADEA disparate treatment claim. *See Woodhouse v. Magnolia Hosp.*, 92 F.3d 248, 252 & n.3 (5th Cir. 1996). First, the plaintiff must demonstrate a prima facie case. *Id.* at 252 n.3. Then, the employer rebuts the prima facie case by producing evidence of a legitimate nondiscrimatory reason for its actions. *Id.* The burden then shifts back to the plaintiff, who, in order to be successful, must show that the defendant's purported reason for its actions is merely a pretext and that the defendant, in reality, made its decision based on the plaintiff's age. *Id.*

In order to set forth a rebuttable presumption of discrimination, Plaintiff must demonstrate a prima facie case, which consists of showing

(1) he [or she] was discharged; (2) he [or she] was qualified for the position; (3) he [or

she] was within the protected class at the time of the discharge; and (4) he[or she] was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his [or her] age.

*Bodenheimer v. PPG Indus.*, 5 F.3d 955, 957 (5th Cir. 1993). Here, it is not contested that Plaintiff's contract was not renewed, which is equivalent to a discharge, or that Plaintiff was eligible for rehire under the limitations set forth in the Texas code. Likewise, it is not disputed that Plaintiff, due to her age, was in the ADEA-protected class. Finally, Defendant admits that the person who filled Plaintiff's position was under forty at the time of her selection. Therefore, Plaintiff has sufficiently raised a rebuttable presumption that she was fired because of her age.

The burden next falls to Defendant, who must produce evidence that it had a legitimate reason other the Plaintiff's age for not renewing her contract. *See id.* (citing *Oliltsky v. Spencer Gifts, Inc.*, 964 F.2d 1471, 1478 n.19 (5th Cir. 1992)) . Defendant claims that its reason for not renewing Plaintiff's contract was not related to her age. Rather, Defendant claims that it did not renew Plaintiff's contract because of her retired status. Defendant points out that it invited Plaintiff to re-apply for her teaching position and would have considered her application in August, after giving preference to non-retired applicants pursuant to Texas Government Code § 824.602(m), but that Plaintiff declined the offer. Further, Plaintiff agreed that had she not retired, she would still be employed by Defendant. Thus, the decision was not made on the basis of her age and instead was made based upon the fact that Plaintiff is retired. While her retirement status is similar to age, under *Hazen Paper*, it is *not* age. *See Hazen Paper*, 507 U.S. at 611, 113 S. Ct. at 1707 ("Because age and years of service are *analytically distinct*, an employer can take account of one while ignoring the other, and thus it is incorrect to say that a decision based on years of service is necessarily 'age based.'" (emphasis added)). Therefore, a decision made based on Plaintiff's retirement status is not

5

made because of her age and is not a violation of the ADEA.[1]

Because Defendant has presented the Court with a legitimate nondiscriminatory reason for its policy, Plaintiff must show that Defendant's reason is a pretext in order to prevail. Plaintiff has failed to show that Defendant's reliance on her retirement status, which it allegedly relied on in an attempt to remain in compliance with § 824.602(m), was a pretext. Plaintiff must show that "the protected trait actually motivated the employer's decision." *Hazen Paper*, 507 U.S. at 609, 113 S. Ct. at 1706. The trait must have had a "determinative influence on the outcome." *Id.* Here, it is clear that Defendant was not motivated by Plaintiff's age. Plaintiff was over forty and thus a member of the protected class when Defendant hired her for the first time, before she retired. She retired at the age of sixty, and was rehired at the same age. Then, in 2004, Defendant renewed Plaintiff's contract. Plaintiff was sixty-one in 2004. If age were Defendant's motivating factor, it would not have hired Plaintiff in the first place, and it would not have invited her to re-apply for the position. *See, e.g.*, *Brown v. CSC Logic, Inc.*, 82 F.3d 651 (5th Cir. 1996) ("[I]t hardly makes sense to hire workers from a group one dislikes . . . only to fire them once they are on the job." (citations and quotations omitted)).[2] As the Supreme Court observed, Congress passed the ADEA out of "concern that older

---

[1] Defendant also asserts that its policy of not renewing retired teachers' term contracts is based on its desire to remain in compliance with Texas Government Code § 824.602(m). Section 824.602(m) clearly states that "a teacher who is not a retiree [must] be given preference in *hiring*." (emphasis added). Defendant had already hired Plaintiff, so it was not required to refuse to renew her contract, which would have renewed automatically by state statute if she had not received the nonrenewal notice, in order to remain in compliance with the preference in *hiring* requirement. *See* Tex. Educ. Code Ann. § 21.206(b) (Vernon 2006) ("The board's failure to give the notice required . . . within the time specified constitutes an election to employ the teacher in the same professional capacity for the following year.").

[2] Plaintiff claims that the "same actor" inference that the Fifth Circuit adopted in *Brown v. CSC Logic, Inc.* does not apply in this case because Defendant has not offered evidence that the same individual was responsible for the hiring decision and the decision not to renew Plaintiff's

6

workers were being deprived of employment on the basis of inaccurate and stigmatizing stereotypes." *Id.* at 610, 113 S. Ct. at 1706.  Defendant, who "has hired a total of 156 employees over the age of 55, comprising almost 15% of its work force," is not making its hiring decisions based on such outmoded ideas.  Therefore, Defendant did not treat Plaintiff differently because of her age, and Plaintiff's disparate treatment claims fails.

## B.  Disparate Impact

Disparate impact claims involve "employment practices or policies that are facially neutral in their treatment of . . . protected groups, but, in fact, have a disproportionately adverse effect on such . . . protected group[s]." *Pacheco v. Mineta*, 448 F.3d 783, 787 (5th Cir. 2006); *see Int. Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15, 97 S. Ct. 1843, 1854 n.15, 52 L. Ed. 2d 396 (1977) (discussing the difference between disparate treatment and disparate impact claims).  Unlike disparate treatment claims, disparate impact claims do not require a showing of discriminatory motive. *See Griggs v. Duke Power* Co., 401 U.S. 424, 430-32, 91 S. Ct. 849, 853–54, 28 L. Ed. 2d 158 ("Congress directed the thrust of [Title VII] to the consequences of employment practices, not simply the motivation."); *Int. Bhd. of Teamsters*, 431 U.S. at 335 n.15, 97 S. Ct. at 1854 n.15 ("Proof of discriminatory motive . . . is not required under a disparate-impact theory."); *Pacheco*, 448 F.3d at 787 ("In disparate-impact cases, proof or finding of discriminatory motive is not required.").  A plaintiff may show the disparate impact of the facially neutral policy by "identifying the specific employment practice that is challenged," and then offering statistical evidence that the disparity was

---

contract. (Pl.'s Resp. Opp'n Def.'s Mot. Summ. J. 17.)  Plaintiff further asserts that the inference is not a presumption and therefore should not lead to a legal conclusion. *Id.*  However, the Court finds that, taking the Record as a whole, a reasonable fact-finder could not find that Defendant based its decision on Plaintiff's age—particularly in light of the statistics regarding Defendant's hiring practices. *See Liberty Lobby*, 477 U.S. at 247–48, 106 S. Ct. at 2510.

caused by the practice. *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994, 108 S. Ct. 2777, 2788, 101 L. Ed. 2d 827 (1988). The "statistical disparities must be sufficiently substantial that they raise . . . an inference of causation." *Id.*, 108 S.Ct. at 2789.  In Title VII cases, a Defendant may rebut a claim of disparate impact by "proving that the challenged policy is a business necessity." *Pancheco*, 448 F.3d at 787 (citing *Griggs*, 401 U.S. 424, 91 S. Ct. 849).

     *1. The Applicability of* Ward's Cove

     Recently, the Supreme Court verified that disparate impact claims are available under the ADEA. *See Smith*, 544 U.S. at 236–40, 125 S. Ct. at 1542–44.  However, it warned that "the scope of disparate-impact liability under ADEA is narrower than under Title VII." *Id.* at 240, 125 S. Ct. at 1544.  First, *Ward's Cove Packing Co. v. Atonio*, 490 U.S. 642, 109 S Ct. 2115, 104 L. Ed. 733 (1989), which is no longer applicable to Title VII cases, is still applicable to ADEA cases. *See id.* at 240, 125 S. Ct. at 1545; *see also* Civil Rights Act of 1991, 105 Stat. 1071 (clarifying, post-*Wards Cove*, the provisions of Title VII "regarding disparate impact actions").  Under *Wards Cove*, the employee has the burden of "isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities." 490 U.S. at 656, 109 S. Ct. at 2124. In the instant case, Plaintiff must show (1) statistical disparities; and (2) that not renewing retired teachers' contracts was the cause of such disparities.  *See Stout v. Baxter Healthcare Corp.*, 282 F.3d 856, 860 (5th Cir. 2002) ("To establish a *prima facie* case of disparate impact, a plaintiff must both identify the employment practice that has the allegedly disproportionate impact and establish causation by offering statistical evidence to show that the practice . . . has resulted in prohibited discrimination.").  Plaintiff alleges that *all* the rehired retirees who received nonrenewal notices were over forty, and that the nonrenewal policy thus had a disparate impact on 100% of the protected class.

While Plaintiff has sufficiently shown that all teachers who were not renewed due to the nonrenewal policy were over the age of forty, Plaintiff has not presented the Court with any statistics regarding how many teachers in general did not have their term contracts renewed pursuant to Defendant's other contract renewal guidelines. *Cf. Black Fire Fighters Ass'n of Dallas v. City of Dallas*, 905 F.2d 63 (5th Cir. 1990) (requiring a "complete picture" of "all promotional criteria" in order to show discrimination). Defendant could have nonrenewed the contracts of nonretired teachers at the same rate as retired teachers, in which case there would be no disparate impact to the retired teachers who were members of the protected class.  While this theory is unlikely given the current shortage of teachers in Texas, it is nonetheless a theory which Plaintiff should have answered with statistics.

In a disparate impact case, "the plaintiff must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group." *Watson*, 487 U.S. at 994, 108 S. Ct. at 2789.  Plaintiff merely offers evidence that 100% of the retired teachers' contracts were not renewed.  Defendant, on the other hand, has presented the Court with un-rebutted statistics indicating that it hires retired teachers more often than other school districts in Texas and, in fact, that *all* of the retired teachers in the school district, other than Plaintiff, chose to resign and reapply for their positions rather than face nonrenewal.  The Court has not received any statistical analyses regarding how many of these retired teachers remained employed for the following school year, but if the rest of the retired teachers who were affected by the policy did not suffer an interruption in employment due to the policy, they were not disparately impacted by the practice.  While Defendant's policy theoretically *could* cause a disparate impact on retired workers who are members of the protected class, Plaintiff has failed to meet her burden of presenting the Court with summary judgment evidence

9

indicating that older teachers actually were disparately impacted by the nonrenewal policy.

### 2. Reasonable Factor Other Than Age

The second difference between ADEA disparate impact claims and Title VII disparate impact claims is that the ADEA encompasses different statutory language. Specifically, the ADEA allows employers to take actions "based on reasonable factors other than age." 29 U.S.C. § 623(f)(1). Thus, the employer is not liable for such actions "if the adverse impact was attributable to a nonage factor that was 'reasonable.'" *Smith*, 544 U.S. at 239, 125 S. Ct. at 1544. This differs from the employers' defense in a Title VII claim, which requires the employer to show that the practice is a "business necessity." 42 U.S.C. 2000e-2(k)(1)(A); *Pancheco*, 448 F.3d at 787.

In the instant case, even if Plaintiff were able to show a disparate impact on older workers due to the nonrenewal policy, her claim would fail because Defendant based its policy on a reasonable factor other than age. Specifically, Defendant based its policy on Plaintiff's retirement status and its desire to give nonretired teachers who were not drawing a retirement salary preference.[3] Even though,

---

[3]Defendant also claims that Texas Government Code § 825.4041 provides a reasonable factor other than age for the alleged disparate impact. Defendants state that § 825.4041 "imposes a financial penalty on school districts that hire retired educators." (Def.'s Mot. Summ. J. 15.) However, § 825.4041 only applies to new employees or employees that were rehired on or after September 1, 2005. *See* TEX. GOV'T CODE ANN. § 825.4041 (Vernon 2006). The nonrenewal of Plaintiff's contract occurred in June 2005. Therefore, it was not reasonable for Defendant to fail to renew Plaintiff's contract on the basis of § 825.4041.

The Court notes that § 825.4041 has made it substantially less attractive for school districts to hire retirees, thus prohibiting Texas schoolchildren from benefitting from their expertise. *See* Carole Keeton Strayhorn, *Special Report: The Cost of Underpaying Texas Teachers*, Window on State Government, Mar. 2006 (reporting that the surcharge can cost school districts up to $668 per retired teacher they hire each month and that "[s]ome school districts have told the Comptroller's office that this surcharge is hurting their attempts to retain experienced teachers"). While said section is irrelevant to the instant case, the Court does not discount the possibility that § 825.4041 may have a disparate impact on older workers. Such a claim must, however, be backed up by hard statistics indicating such an impact.

as discussed above, the Court is not convinced that Defendant was required to nonrenew the retired teachers who were in its employ to remain in compliance with Texas law, *see* note 2, the policy is a reasonable response to the requirement to give nonretired teachers preference in hiring.  Under *Smith*, Defendant is not required to show that there are no other ways of remaining in compliance with the requirement, as it would under the Title VII business necessity test; it is simply required to show that "the [method] selected was not unreasonable." *Id.* at 243, 125 S. Ct. at 1546.  Defendant has met that burden.  Therefore, even if Plaintiff had presented the Court with statistics indicating that Defendant's policy had a disparate impact on teachers over the age of forty, she would not prevail.

## IV.  Fourteenth Amendment Claims

### A.  *Due Process Clause*

Plaintiff alleges, in her Complaint, that "[D]efendant's policy constitutes a denial of Due Process and Equal Protection guaranteed to all persons under the fourteenth amendment of the United States Constitution." (Comp. ¶ 11.)  However, in her Response in Opposition to Defendant's Motion for Summary Judgment, she does not refute the arguments Defendant made in its Motion for Summary Judgment regarding the Due Process claim.  Namely, Defendant notes that (1) Defendant did not violate Plaintiff's property and liberty interests because Texas schoolteachers do not have a property interest in their term contracts; and (2) Defendant did not infringe on Plaintiff's substantive due process rights because its policy was based on legitimate reasons and therefore was not arbitrary, irrational, or capricious.

A violation of substantive due process occurs when the government deprives someone of liberty or property, or when the government works a deprivation of a constitutionally protected interest. *See* U.S. Const. amend. XIV ("No State shall . . . deprive any person of life, liberty, or

11

property, without due process of law."). Therefore, Plaintiff must first prove the deprivation of a constitutionally protected life, liberty, or property interest, and then identify an official action that caused the constitutional deprivation. *See Blackburn v. City of Marshall*, 42 F.3d 925, 935 (5th Cir. 1995). Plaintiff did not have a constitutionally protected property interest in her term contract, because such an interest must "stem from independent sources such as state statutes, local ordinances, existing rules, contractual provisions, or mutually explicit understandings." *Blackburn*, 42 F.3d at 936–37. Rather than creating a property interest in a term contract, Texas law explicitly denies teachers a property interest in their employment beyond the term set out in their contracts. *See* Texas Education Code § 21.204(e); *Carey v. Aldine Indep. Sch. Dist.*, 996 F. Supp. 641, 651-52 (S.D. Tex. 1998). Plaintiff has not made any allegations that could even remotely be associated with the creation of a property right in her employment. She has not asserted that Defendant made any promises or representations to her other than contracting with her for one year of employment, which was extended to two, and she has not presented the Court with any local ordinances or rules that could be construed to create a constitutionally protected interest. Thus, if her claim of a substantive due process violation is based on an alleged property interest in employment, she has not succeeded in producing even a scintilla of evidence to defend such a claim and survive summary judgment.

*B. Equal Protection Clause*

Plaintiff's final contention is that Defendant's policy of not renewing retired teachers' contracts violates the Equal Protection Clause of the United States Constitution, which prohibits a state from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. When a state classifies individuals on the basis of age, the classification must be "rationally related to a legitimate state interest." *City of Cleburne v. Cleburne Living Center*,

12

473 U.S. 432, 440, 105 S. Ct. 3249, 3254, 87 L. Ed. 2d 313 (1985); *see also Mass. Bd. of Retirement v. Murgia*, 427 U.S. 307, 312–14, 96 S. Ct. 2562, 2566, 49 L. Ed. 2d 520 (1975) (holding that "rationality is the proper standard" for age discrimination claims).   The rational basis analysis begins with a "strong presumption of constitutional validity," and "[i]t is [Plaintiff's] burden to show that the law [or policy], as-applied, is arbitrary; and not the government's to establish rationality." *Malagon de Fuentes v. Gonzales*, 462 F.3d 498, 504 (5th Cir. 2006).   "The rationality commanded by the Equal Protection Clause does not require States to match age distinctions and the legitimate interests they serve with razorlike precision." *Kimel v. Fl. Bd. of Regents*, 528 U.S. 62, 83, 120 S. Ct. 631, 635, 145 L. Ed. 2d 522 (2000).   A higher level of scrutiny need not be applied because age classifications do not set apart a "'discrete and insular'" group in need of "extraordinary protection." *See Murgia*, 427 U.S. at 313, 96 S. Ct. at 2567 (quoting *United States v. Carolene Products Co.*, 304 U.S. 144, 152–53 n.4, 58 S. Ct. 778, 783 n.4, 82 L. Ed. 1234 (1938)).   Rather, whatever the age demarcation may be, within reason, "each of us will reach if we live out our normal life span." *Id.* at 313–14, 96 S. Ct. at 2567.

    In the instant case, Plaintiff alleges that Defendant unlawfully classified retired teachers on the basis of age.   Plaintiff claims that Defendant did not have a "reasonable basis" for its classification and that it "was not rationally related to any legitimate governmental end." (Pl.'s Resp. in Opp'n to Def.'s Mot. Summ. J. 16.)   Defendant asserts that its classification was based on retirement status, not age.   Defendant further asserts that the classification was rationally related to a legitimate interest: adhering to the statutory requirement to give preference to teachers who are not retired.   In response to this alleged reasonable basis, Plaintiff claims that the Supremacy Clause prohibits Defendant from relying on a state statute to excuse discrimination.

13

*1. Supremacy Clause Claim.*

Plaintiff cites *E.E.O.C. v. Allegheny* for the proposition that Defendant cannot rely on a state statute to refute claims of age discrimination because "it is well-settled that under the Supremacy Clause a state statute which conflicts with a federal statute cannot stand." 705 F.2d 679, 682 (3d Cir. 1983) (citing *Jones v. Rath Packing Co.*, 430 U.S. 519, 525–26, 97 S. Ct. 1305, 1309–10, 51 L. Ed. 2d 604 (1977)).   However, Plaintiff does not allege that the Texas statute requiring the hiring preference, § 824.602, is unconstitutional; she alleges solely that Defendant's policy of failing to renew retired teachers' term contracts is unconstitutional.  The *Allegheny* court did not hold in general that a governmental entity cannot base its classification on a state statute.  It held that the entity cannot base its classification on an *unconstitutional* state statute. *See Allegheny*, 705 F.2d at 682 (stating that "reliance on such an *unconstitutional* statute cannot justify employment discrimination").  Granted, if Plaintiff's ADEA claims had merit and Defendant had relied on the statute to justify deviating from the ADEA, then the Supremacy Clause would be a consideration.  Here, though, there is no conflict with the ADEA because Plaintiff has not shown that the ADEA was violated.

*2. Rational Basis Review.*

Defendant's desire to maintain compliance with § 824.602 is a legitimate interest, and Defendant's nonrenewal policy is a rational response to that interest.  In *Gregory v. Ashcroft*, the Supreme Court held that a provision in the Missouri Constitution that required judges to retire at the age of 70 did not violate the Equal Protection Clause because, even though all judges do not "suffer significant deterioration in performance at age 70," and "[i]t is probably not true that most do," it was rational for the state "to conclude that the threat of deterioration . . . is sufficiently great [to] . . . require all judges to step aside at age 70." 501 U.S. 452, 470–73, 111 S. Ct. 2395, 2406–08,

14

115 L. Ed. 2d 410 (1990).  The Court noted that "a State 'does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect.'" *Id.* at 473, 111 S. Ct. at 2407 (citations and quotations omitted).  In the instant case, even though Defendant's reasoning for reliance on § 824.602 was imperfect, as was Missouri's generalization regarding judges over 70, it was rational for Defendant to decide to require retired teachers to either resign and reapply or face nonrenewal in order to remain in compliance with the statute.

## IV.  Conclusions

Plaintiff has not met her burden of showing that Defendant's policy of not renewing retired teachers' term contracts violates the Equal Protection Clause or the Due Process Clause.  Likewise, Plaintiff has not met her burden under the ADEA for her disparate treatment claim because she failed to present evidence that Defendant's nondiscriminatory reason for its policy was a pretext, and her disparate impact claim fails because she failed to present a prima facie case.  Consequently, Plaintiff's Motion for Partial Summary Judgment is **DENIED**.  Defendant's Motion for Summary Judgment is **GRANTED**.  Plaintiff's claims against Defendant are **DISMISSED WITH PREJUDICE**.  Each Party is to bear its own taxable costs, expenses, and attorney's fees incurred herein to date.  A Final Judgement will be issued contemporaneously with this Order.

**IT IS SO ORDERED**.

**DONE** this 13th day of November, 2006, at Galveston, Texas.

Samuel B. Kent
United States District Judge

15